UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ralph Faiella

    v.                        Civil No. 16-cv-088-JD
                                 Opinion No. 2017 DNH 026

Green Tree Servicing LLC and
Federal National Mortgage Association


O R D E R

Ralph Faiella brought a title action in state court against Federal National Mortgage Association ("Fannie Mae") and Green Tree Servicing LLC, now known as Ditech Financial LLC ("Ditech"), which was removed to this court. After a dispute arose about what claim remained to be decided against Fannie Mae, the court allowed Faiella to file an amended complaint. Ditech moves to strike, or in the alternative to dismiss, the claims against it in the amended complaint. Fannie Mae moves to dismiss Counts I, IV, V, and VI.


Factual Background[1]

In 2007, Ralph Faiella obtained a loan secured by a mortgage on a condominium property in Plaistow, New Hampshire.

---

[1] The facts in this section are derived from Faiella's Second Amended Complaint, the exhibits attached thereto, and the original note, which Fannie Mae has attached to its motion to dismiss. The court may consider the note because Faiella does not dispute its authenticity and the document is referenced in the Second Amended Complaint. See Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 7 (1st Cir. 2014) (considering documents referenced in complaint for motion to dismiss).

The note, which was originally payable to Bank of America, N.A. (see doc. no. 43-2 at 1), was subsequently assigned to Fannie Mae.

In 2015, Faiella fell behind on his mortgage payments.  On September 16, 2015, foreclosure counsel for Fannie Mae sent Faiella a letter notifying him that a foreclosure sale on the property had been scheduled for October 16, 2015.[2]  Around the same time, Ditech, who serviced the loan on Fannie Mae's behalf, sent Faiella a letter requesting that he contact them to obtain the correct reinstatement amount for his loan.  Faiella spoke with a Ditech representative to arrange a payment that would bring his account up to date.

In response to this conversation, Faiella sent a check to Ditech on September 17, 2015 covering the unpaid debt through September and the October payment.  Ditech, however, returned Faiella's check with a letter requesting that Faiella contact it

---

[2] The Second Amended Complaint frequently refers to "the bank" without specifying whether Fannie Mae or Ditech committed the alleged wrongdoing.  Based on the other allegations in the Second Amended Complaint and Faiella's arguments in his objection to the motion to dismiss, the court construes the Second Amended Complaint to allege that Ditech, the servicer, was the entity communicating with Faiella concerning the status of his loan and that Fannie Mae, as the mortgage holder, was the entity that foreclosed on his property.

to determine the correct reinstatement amount.  Faiella then
called the same Ditech representative, and the representative
informed him that the amount of his check was correct but that
the payment was rejected because it was not a cashier's check.
Several days before the scheduled foreclosure, Faiella sent
Ditech a cashier's check for the amount that Ditech's
representative confirmed would bring his account current.

Notwithstanding Faiella's payment, Fannie Mae foreclosed on
the property as scheduled.  After the foreclosure, Faiella
received a letter from Ditech returning the second check and
informing him that the amount of the check was not enough to
reinstate his account.  At this time, the Ditech representative
with whom Faiella had spoken told him that she did not know the
correct reinstatement amount for his loan.

### Procedural Background

Faiella filed a title action in state court, arguing, among
other things, that Fannie Mae and Ditech had wrongfully
foreclosed on his residence.  The defendants removed the title
action to this court, and Faiella then amended his complaint as
a matter of right, asserting a single claim for wrongful
foreclosure against Ditech and Fannie Mae.  Ditech then moved to
dismiss the wrongful foreclosure claim against it, arguing that

it was not a foreclosing party.  The court granted Ditech's
motion to dismiss on June 23, 2016.  See Doc. No. 20.

On August 29, 2016, the court granted Faiella leave to
amend his complaint "to add damages claims against Fannie Mae."
Doc. No. 32 at 4.  Faiella then filed his Second Amended
Complaint on October 12, 2016.  That complaint alleged statutory
claims against Ditech and Fannie Mae under the Truth in Lending
Act ("TILA"), the Fair Debt Collection Practices Act ("FDCPA"),
New Hampshire's Unfair, Deceptive, or Unreasonable Collection
Practices Act ("UDUCPA"), New Hampshire's Consumer Protection
Act ("CPA"), and common law claims for deceit and negligent
misrepresentation.

## Discussion

Ditech moves to strike the claims against it, arguing that
those claims constitute an improper amendment of Faiella's
complaint.  Ditech also moves in the alternative to dismiss the
claims.  In addition, Fannie Mae moves to dismiss the statutory
claims against it, arguing that Faiella has not properly alleged
claims under the cited statutes.  Faiella objects to both
motions.

## Standard of Review

A motion to dismiss is reviewed under Federal Rule of Civil
Procedure 12(b)(6), which addresses whether the complaint states

a claim on which relief may be granted.  Lister v. Bank of Am.,
N.A., 790 F.3d 20, 23 (1st Cir. 2015). In conducting this
review, the court "accept[s] as true all well-pled facts alleged
in the complaint and draw[s] all reasonable inferences in the
plaintiff's favor." Yershov v. Gannett Satellite Info. Network,
Inc., 820 F.3d 482, 485 (1st Cir. 2016).  "A plaintiff's
allegations are sufficient to overcome a Rule 12(b)(6) motion if
they contain 'enough facts to state a claim to relief that is
plausible on its face.'" Id.  (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 569 (2007)).

I.   Ditech's Motion

     Ditech moves to strike Faiella's Second Amended Complaint,
arguing that it is an improper amendment of a pleading under
Federal Rule of Civil Procedure 15(a) and also moves to dismiss
the claims against it.  Faiella's objection simply incorporates
"the arguments raised in Plaintiff's Motion to Dismiss,
previously filed as well as Plaintiff's Motion for Clarification
which will be filed on or before December 18, 2016."  The motion
to which Faiella refers is not relevant to the issues raised in
Fannie Mae's motion, and Faiella never filed the "motion for
clarification" to which he refers.  Therefore, Faiella provides
no substantive argument to oppose Ditech's motion.

Once the time for filing an amended complaint as a matter of right has passed, as is the case here, a plaintiff must seek the opposing party's consent or leave of the court to amend the complaint. Fed. R. Civ. P. 15(a)(2). The court granted Faiella a limited opportunity to amend his complaint to "assert[] . . . damages claims against Fannie Mae." Doc. no. 32 at 4. Faiella did not seek leave to add claims against Ditech, and no such opportunity was granted.

Therefore, the claims alleged in the second amended complaint against Ditech do not comply with the procedural rules. The claims against Ditech in Counts I-VI are therefore struck from the Second Amended Complaint.[3]

II.   <u>Fannie Mae's Motion</u>

Fannie Mae moves to dismiss Faiella's claims under TILA, the FDCPA, the UDUCPA, and the CPA, arguing that Faiella has failed to plead viable claims under those statutes. Faiella objects.

_____

[3] Because the court concludes that Ditech's claims should be struck on procedural grounds, it need not consider Ditech's motion to dismiss.

A.   <u>TILA</u>

Faiella's TILA claim is premised on 15 U.S.C. § 1638(f) and its implementing regulation, 12 C.F.R. 1026.41, which require servicers to provide mortgage borrowers a periodic statement each billing cycle containing certain information about their loans.  Faiella alleges that Fannie Mae is vicariously liable under TILA because Ditech provided him inaccurate information concerning the amount required to bring his account current.

Fannie Mae argues that Faiella's TILA claim must be dismissed because vicarious liability is not permitted under TILA.  Fannie Mae also argues that as an assignee it cannot be liable under TILA for violations occurring after the loan was originated.  In response, Faiella contends that TILA allows vicarious and assignee liability for a servicer's failure to provide a correct periodic statement.

1. <u>Assignee Liability</u>

TILA provides for civil liability against creditors and, in limited circumstances, assignees of creditors.  Section 1640, which is entitled "civil liability," provides a private right of action for damages against "any creditor who fails to comply with" TILA's requirements for credit transactions.  15 U.S.C. § 1640(a); <u>see</u> <u>also</u> <u>McKenna v. Wells Fargo Bank, N.A.</u>, 693 F.3d

207, 211 (1st Cir. 2012).  There is no dispute that Fannie Mae is not a creditor under TILA because it is not the entity to whom Faiella's note was originally payable.  See 15 U.S.C. § 1602(g)(defining creditor).  Rather, Fannie Mae became the note holder through assignment.

Section 1641(e) governs assignee liability under TILA for violations involving "a consumer credit transaction secured by real property."  That section extends creditor liability to assignees but "only if" the violation "is apparent on the face of the disclosure statement provided in connection with such transaction."  § 1641(e)(1)(A).  A violation is apparent on the face of the disclosure statement if "(A) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (B) the disclosure statement does not use the terms or format required to be used by this subchapter."  § 1641(e)(2).

Fannie Mae contends that the disclosure statement is a document created and provided to borrowers before the loan is finalized.  Based on that assertion, Fannie Mae argues that the alleged incorrect reinstatement amount cannot be apparent on the face of the disclosure statement because such information only exists after the loan's execution.  In response, Faiella argues

8

that § 1638(f) and § 1026.41 "expanded TILA disclosures to include the periodic statement provided after closing."

TILA is a "disclosure statute" that, generally, "'requires disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction.'" Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1120 (9th Cir. 2009) (quoting Rendler v. Corus Bank, 272 F.3d 992, 996 (7th Cir. 2001)).  The statute "uses the term 'the disclosure statement' to refer to [the disclosure] documents provided before the extension of credit." Evanto v. Fed. Nat. Mortg. Ass'n, 814 F.3d 1295, 1298 (11th Cir. 2016); Signori v. Fed. Nat. Mortg. Ass'n, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013) ("[T]he TILA provisions are clear that the disclosure documents referred to in Section[] . . . 1641(e)(1) are documents generated in connection with the origination of the loan."); Claude v. Wells Fargo Home Mortg., 2014 WL 4073215 (D. Conn. Aug. 14, 2014). Consequently, violations based on information and events occurring after a mortgage loan has been made cannot serve as a basis for assignee liability under TILA.  See Evanto, 814 F.3d at 1298.

Contrary to Faiella's argument, § 1638(f), the provision in TILA requiring mortgage servicers and note holders to make periodic statements, does not alter this conclusion.  Section

1638 provides requirements for "transactions other than open end credit plan[s]," which is a group of transactions that includes most mortgages.  Section 1638(a) is entitled "[r]equired disclosures by creditor" and, as its title suggests, it enumerates the disclosures that a creditor must make with respect to such credit transactions.  Other provisions in § 1638 refer to the disclosures required under § 1638(a) as a "disclosure statement."  § 1638(b)(2)(D).  The choice not to include the periodic statement requirement in § 1638(a) is evidence that Congress did not intend periodic statements to be TILA "disclosure statements."  This inference is reinforced by the language of § 1638(f), which does not use the words "disclose" or "disclosure" but rather provides that servicers or note holders "shall transmit" periodic statements "setting forth" information.  § 1638(f)(1).

In addition, § 1641(e) contradicts Faiella's interpretation.  That section provides that substantive errors on a disclosure statement will be apparent when they can be identified by comparison to "any itemization of the amount financed, the note, or any other disclosure of disbursement," all of which are documents and disclosures concerning the loan's closing.  § 1641(e)(2).  Faiella does not explain how any of these documents could provide a basis for concluding that the

10

periodic statement he received contained an incorrect reinstatement amount.[4]  Therefore, the periodic statements required under TILA are not disclosure statements.

Here, Faiella alleges that Fannie Mae violated TILA because Ditech failed to provide him the proper reinstatement amount. Because that amount can only be calculated after the loan is consummated, any error concerning that amount cannot be apparent on the face of Faiella's disclosure statement.  Accordingly, Faiella has failed to plead a violation for which Fannie Mae as an assignee may be liable under TILA.[5]

---

[4] To the extent Faiella contends that the Consumer Financial Protection Bureau has adopted a different interpretation of the term "disclosure statement," the court is not persuaded.  As the court in Evanto observed, the Bureau's website informs borrowers that the TILA disclosure statement is a document provided before or at closing that discloses information about the cost of credit.  Evanto, 814 F.3d at 1298 (citing What Is a Truth-in-Lending Disclosure?, Consumer Fin. Prot. Bureau, http://www.consumerfinance.gov/askcfpb/180/what-is-a-truth-in-lending-disclosure.html) ("A Truth-in-Lending Disclosure Statement provides information about the costs of your credit . . . .  You receive a Truth-in-Lending disclosure twice: an initial disclosure when you apply for a mortgage loan, and a final disclosure before closing.").

[5] The court notes that some cases have declined to apply § 1641's limitation on assignee liability to certain violations of TILA.  The court is not persuaded that the reasoning of those cases applies to the allegations presented here.

2. <u>Vicarious Liability</u>

To the extent that Faiella relies on the doctrine of vicarious liability as an alternative means of holding Fannie Mae liable, that argument fails.  Even assuming that TILA provides for vicarious liability, Faiella can only pursue that theory of liability if he has a private right of action to bring suit.  James v. Nationstar Mortg., LLC, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015) (rejecting vicarious liability for assignee under TILA because the statute "does not create or allow a cause of action for damages against assignees").  As discussed above, TILA precludes a private right of action against assignees in the circumstances alleged here.  Therefore, Faiella's vicarious liability theory does not preclude dismissal.

B.   <u>FDCPA</u>

Faiella brings a claim against Fannie Mae for violation of the FDCPA based on allegations that Fannie Mae wrongfully foreclosed on its mortgage and Ditech provided the incorrect reinstatement amount.  Fannie Mae contends that Faiella's claim must be dismissed because it is not a "debt collector" under the FDCPA.  Faiella does not respond to Fannie Mae's argument concerning its status as a debt collector.

To state a claim for violation of the FDCPA, Faiella must
allege, among other things, that "the defendant attempting to
collect the debt qualifies as a 'debt collector' under the Act."
Fortin v. Ocwen Loan Servicing, LLC, 2015 WL 5693115, at *4
(D.N.H. Sept. 28, 2015) (quoting Moore v. Mort. Elec. Reg. Sys.,
Inc., 848 F. Supp. 2d 107, 124 (D.N.H. 2012)).   The FDCPA
defines the term "debt collector" as "any person . . . in any
business the principal purpose of which is the collection of any
debts, or who regularly collects or attempts to collect . . .
debts owed or due or asserted to be owed or due another."
Sheriff v. Gillie, 136 S. Ct. 1594, 1598 (2016) (quoting 15
U.S.C. § 1692a(6)).

The definition of debt collector generally excludes
creditors and mortgage assignees who acquire the loan before it
enters default.  Perry v. Stewart Title Co., 756 F.2d 1197, 1208
(5th Cir. 1985) ("The legislative history of section 1692a(6)
indicates conclusively that a debt collector does not include
the consumer's creditors, a mortgage servicing company, or an
assignee of a debt, as long as the debt was not in default at
the time it was assigned."); F.T.C. v. Check Investors, Inc.,
502 F.3d 159, 172 (3rd Cir. 2007) ("[A]n assignee of an
obligation is not a 'debt collector' if the obligation is not in
default at the time of assignment"); Crepeau v. JP Morgan Chase

13

Bank, N.A., 2011 WL 6937508, at *5 (D.N.H. Dec. 5, 2011) (concluding that the "term 'debt collector' does not include consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned").

Here, Faiella alleges that Fannie Mae is the holder of the debt and that it became the holder through assignment.  Faiella, however, does not allege that he was in default on his loan when the debt was assigned to Fannie Mae.  Faiella also fails to allege any other facts that would allow the court to plausibly infer that Fannie Mae is a "debt collector" for purposes of the FDCPA.  The Second Amended Complaint alleges that Fannie Mae "regularly" collects debts through the enforcement of security interests but it does not allege that those debts are owed to someone other than Fannie Mae.  Moreover, Faiella alleges no facts concerning the principal purpose of Fannie Mae's business.[6]

---

[6] Faiella asserts that he also brings his FDCPA claim under § 1692f(6).  For the purposes of that section, the term debt collector also includes "any person . . . in any business the principal purpose of which is the enforcement of security interests."  § 1692a(6).  Faiella has not pled that Fannie Mae is a debt collector under this expanded definition because, as discussed above, he alleges no facts concerning the principal purpose of Fannie Mae's business.

Therefore, Faiella has failed to plead that Fannie Mae is a debt collector under the FDCPA.[7]

    C. UDUCPA

    Faiella brings a claim against Fannie Mae for violation of RSA 358-C, the UDUCPA, arguing that Fannie Mae is vicariously liable under that act for Ditech's failure to provide him the correct reinstatement amount. Fannie Mae contends that Faiella's UDUCPA claim must be dismissed because Faiella has not alleged conduct that is prohibited under the statute.

    The UDUCPA, prohibits "a debt collector from collecting or attempting to collect a debt in an unfair, deceptive or unreasonable manner as defined in this subchapter." Brown v. Wells Fargo Home Mortg., 2016 WL 3440591, at *5 (D.N.H. June 20, 2016) (quoting RSA 358-C:2). Section 358-C:3 of the UDUCPA,

---

[7] Faiella also contends that Fannie Mae is vicariously liable for Ditech's actions under the FDCPA. That theory fails, however, because defendants who are not debt collectors cannot be vicariously liable under the FDCPA. Doucette v. GE Capital Retail Bank, No. 14-CV-012-LM, 2014 WL 4562758, at *2 (D.N.H. Sept. 15, 2014); Ricciardi v. Serv. Credit Union, No. 06-cv-092-JD, 2006 U.S. Dist. LEXIS 28468, at *6 (D.N.H. May 11, 2006) (dismissing FDCPA claim premised on vicarious liability because "the FDCPA applies only to 'debt collectors' . . . [and based on that limitation] courts have consistently rejected attempts to impose FDCPA liability on a creditor for actions of those who collect its debts").

lists a number of actions that are prohibited methods of debt collection because they are "unfair, deceptive or unreasonable." Faiella's claim under the UDUCPA is premised on RSA 358-C:3(III), which prohibits a debt collector from attempting to collect a debt by "[t]hreaten[ing] to take any unlawful action or action which the debt collector in the regular course of business does not take."

Faiella alleges that Ditech committed numerous errors while servicing his loan, which resulted in Ditech providing him the incorrect reinstatement amount. Faiella does not, however, allege that Ditech <u>threatened</u> him with any action that was unlawful or that did not occur in the regular course of Ditech's business. Rather, Faiella alleges that Ditech took actions "that no reasonable servicer or holder would take." That is not enough to allege an unfair practice under RSA 358-C:3(III). Faiella must allege that Ditech threatened him. Brown, 2016 WL 3440591 at *5-6 (dismissing UDUCPA claim alleged under RSA 358-C:3 where plaintiff failed to allege a threat). Because Faiella does not make such an allegation, his UDUCPA claim must be dismissed.[8]

---

[8] To the extent Faiella argues that Fannie Mae violated the UDUCPA by foreclosing on his home, he has not alleged facts that would plausibly support that claim. Even assuming that threatening to wrongfully foreclose on a property constitutes

D. Consumer Protection Act

Fannie Mae contends that it is exempt under the CPA because the Federal Housing Finance Agency regulates its mortgage and foreclosure activities.  Faiella argues that the claimed exemption is inapplicable.

Under the CPA, it is "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within [the] state."  RSA 358-A:2.  Not all trade or commerce, however, falls within the scope of the CPA's prohibitions.  The CPA specifically exempts from its purview any "[t]rade or commerce that is subject to the jurisdiction of . . .  federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices."  RSA 358-A:3.

"The burden of proving exemptions from the provisions of [the CPA] by reason of paragraph[] I of this section shall be

---

threatening "an unlawful action" under UDUCPA, Faiella has not alleged that Fannie Mae threatened foreclosure at a time when doing so would have been wrongful.  The only potential "threat" alleged in the Second Amended Complaint is the notice of foreclosure that Fannie Mae's foreclosure counsel sent to Faiella on September 16, 2015.  Doc. no. 40-3.  Faiella alleges that he sent payment the next day.  Therefore, when the notice of foreclosure was sent, Ditech had not yet received payment. Under Faiella's theory, absent that payment, the notice of foreclosure was not wrongful.

upon the person claiming the exemption."  RSA 358-A:3(V).  To
qualify for the exemption under RSA 358-A:3(I), Fannie Mae must
show that (1) FHFA possesses the authority to regulate unfair
and deceptive trade practices, see RSA 358-A:3(I), and (2) the
practice at issue "occurred in the conduct of 'trade or
commerce' that is subject to [FHFA's] jurisdiction." Rainville
v. Lakes Region Water Co., Inc., 163 N.H. 271, 276 (2012)
(quoting RSA 358-A:3(I)).  The New Hampshire Supreme Court has
interpreted the term "jurisdiction" in the CPA to be equivalent
to legal power or authority.  Id. at 275.  Therefore, to
determine a regulator's jurisdiction, the court must "examine
the statutes that define [its] powers and authority."  Id.

     In support of its exemption argument, Fannie Mae cites 12
U.S.C. § 4511, which grants the director of FHFA "general
regulatory authority" over Fannie Mae "to ensure that the
purposes of [12 U.S.C. § 4511 et seq] the authorizing statutes,
and any other applicable law are carried out." 12 U.S.C. §
4511(b)(2).  That statute also grants FHFA the authority to
regulate Fannie Mae's operations standards, including the
adequacy of its internal controls.  See 12 U.S.C. 4513(a).
These statutory grants of power can reasonably be construed to
grant FHFA regulatory authority over Fannie Mae's mortgage and
foreclosure practices and any unfair or deceptive practices

arising from them. Gasparik v. Fed. Nat'l Mortg. Ass'n, 2016 WL 7015672, at *6 (D.N.H. Dec. 1, 2016) (holding that Fannie Mae is exempt from CPA liability under RSA 358-A:3(I)); Sullivan v. J.P. Morgan Chase & Co., 2014 WL 10383686, at *3 (N.H. Super. Ct. Sept. 23, 2014) (same).[9]

Accordingly, Fannie Mae's mortgage and foreclosure activities are exempt from the CPA under RSA 358-A:3(I).[10]

---

[9] See Office of Inspector General, FHFA's Oversight of Fannie Mae's Default-Related Legal Services (2011), Audit Report Aud-2011-004 (discussing FHFA's oversight of Fannie Mae's management of foreclosure counsel and related foreclosure abuses and observing that "[a]lthough foreclosures are the responsibilities of the servicers and law firms, the Agency has statutory responsibility for the safety and soundness of the Enterprises, and this includes compliance with the legal requirements and liability risks associated with foreclosures"); Office of Inspector General, Evaluation of FHFA's Oversight of Fannie Mae's Management of Operational Risk (2011), Evaluation Report EVL-2011-004 (discussing FHFA's oversight of Fannie Mae's internal controls concerning their servicers' and attorneys' foreclosure practices and its effectiveness in "identify[ing] and correct[ing] abusive foreclosure practices").

[10] Faiella relies on Dionne v. Fed. Nat'l Mortg. Ass., 2016 WL 3264344 (D.N.H. June 14, 2016) in support of his argument that the exemption under RSA 358-A:3 is not applicable. In Dionne the Court held that the exemption did not bar the plaintiff's claims against Fannie Mae, which arose from Fannie Mae's foreclosure of the plaintiff's mortgage. Id. The Dionne court did so, in part, because it concluded that Fannie Mae had failed to demonstrate that FHFA's regulations protected "consumers from the same fraud and unfair practices as the CPA." Id. (quoting Rainville, 163 N.H. at 276). This court does not read Rainville to impose a requirement that a regulator have promulgated a regulation addressing the specific subject matter of the CPA.

III. <u>Conclusion</u>

        For the foregoing reasons, the court grants Fannie Mae's
motion to dismiss (doc. no. 43) and Ditech's motion to strike
the Second Amended Complaint (doc. no. 47).  Accordingly, all
claims against Ditech in the Second Amended Complaint are
struck.

        At this point in time, the parties would be well-advised to
put their effort and resources into resolving this matter.  The
clerk shall schedule a conference with the court.

        SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    United States District Judge


February 14, 2017

cc:  Amy B. Hackett, Esq.
     David Himelfarb, Esq.
     William C. Sheridan, Esq.