Ralph Faiella

    v.                         Civil No. 16-cv-088-JD
                                 Opinion No. 2017 DNH 250

Federal National Mortgage
Association


O R D E R

    Ralph Faiella brought a plea of title action in state court
against Federal National Mortgage Association ("Fannie Mae") and
Green Tree Servicing LLC, now known as Ditech Financial LLC
("Ditech"), which was removed to this court.  Following prior
motion practice, Faiella's remaining claims are for negligent
misrepresentation and deceit against Fannie Mae.  Fannie Mae
moves for summary judgment on both claims and moves to strike
Faiella's requests for certain damages and attorney's fees.
Faiella objects.

    Fannie Mae also moves to strike certain statements in the
affidavit Faiella filed in support of his opposition to Fannie
Mae's motion for summary judgment.  Faiella did not file an
objection to this motion.

I.   Motion to Strike

    In support of his objection to Fannie Mae's motion for
summary judgment, Faiella attached his own affidavit.  Doc. no.
87-2.  In that affidavit, Faiella asserts numerous details

concerning the servicing of his loan by Ditech, including his interactions with his account representative, Latosha C.[1]  Fannie Mae moves to strike several of Faiella's statements, arguing that they are not admissible.  Faiella objects.

Whether an affidavit is admissible for summary judgment purposes is governed by Federal Rule of Civil Procedure 56. Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "[P]ersonal knowledge is the touchstone" of the admissibility analysis.  Perez v. Volvo Car Corp., 247 F.3d 303, 315–16 (1st Cir. 2001).  In addition, an affidavit's statements "must concern facts as opposed to conclusions, assumptions, or surmise" to be admissible.  Id. at 316.  Finally, because Rule 56 "requires a scalpel not a butcher knife," a court must only strike the portions of an affidavit that are inadmissible, while crediting the remaining portions. HMC Assets, LLC v. Conley, No. CV 14-10321-MBB, 2016 WL 4443152, at *2 (D. Mass. Aug. 22, 2016) (quoting Perez, 247 F.3d at 315).

---

[1] Faiella's second amended complaint uses the names "Latasha" and "Latosha" to refer to his account representative at Ditech.  For consistency, the court will adopt the spelling Latosha.

Fannie Mae has identified several statements in Faiella's affidavit that it contends are inadmissible. Several of those statements concern Faiella's personal knowledge of his interactions with Ditech and its representatives and are, therefore, likely admissible under Rule 56. Nevertheless, other statements appear to be inadmissible.

For example, Faiella makes statements about the internal workings of Ditech's servicing systems without explaining how that information is within his personal knowledge. Further, Faiella asserts that the repayment amount on his mortgage statement was incorrect, which is a conclusion that is unsupported by any facts in the record. In any case, the court need not parse the affidavit because, as discussed below, the challenged statements are not material to the court's resolution of Fannie Mae's summary judgment motion.

## II. Motion for Summary Judgment

Fannie Mae moves for summary judgment on Faiella's remaining negligence and deceit claims, arguing that they are barred by the economic loss doctrine and the Merrill doctrine. Alternatively, Fannie Mae moves to strike Faiella's claims for certain damages. Faiella objects, contending that his claims are not barred by either doctrine. In addition, Faiella argues

that he is entitled to emotional distress damages based on the underlying conduct alleged in the case.

On November 14, 2017, Fannie Mae notified the court of its intent to reply to Faiella's objection. In a procedural order, the court granted Fannie Mae leave to file a reply no later than November 27, 2017 and leave for Faiella to file a surreply no later than December 7, 2017. Doc. no. 91. As the record in this case demonstrates, the plaintiff's counsel repeatedly has missed deadlines and filed "emergency" motions for extensions of time. Because of that pattern and the resulting delay in the case, the court ordered that the deadlines for defendants' reply and for the plaintiff's surreply were "ABSOLUTE." Doc. no. 91 at 1. The parties did not object to the absolute deadlines.

Despite that order, the plaintiff's counsel filed his surreply on December 11, several days after the court's absolute deadline of December 7. Because plaintiff failed to meet the deadline as ordered, the court will not consider plaintiff's surreply. Therefore, the court will rule on the pending motion for summary judgment based on the record as of December 5, 2017.

## Legal Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the record permits a sensible factfinder to decide it in either party's favor."  Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 77 (1st Cir. 2017).  "And a fact is 'material' if its existence or nonexistence 'might affect the outcome of the suit under the governing law.'"  Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In conducting its review, the court draws "all reasonable inferences in favor of the nonmoving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation."  Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 31 (1st Cir. 2016) (internal quotation marks omitted).  Where, as here, the party moving for summary judgment bears the burden of proof on an issue, it "cannot attain summary judgment unless the evidence [it] provides on that issue is conclusive."  Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 50 (1st Cir. 2011).

Factual Background

In July 2007, Faiella obtained a loan secured by a mortgage on a condominium property in Plaistow, New Hampshire.  The note, which was originally payable to Bank of America, N.A., was subsequently assigned to Fannie Mae.  In September 2013, Ditech began servicing the mortgage loan on behalf of Fannie Mae.

## A. Foreclosure

Faiella fell behind on his mortgage payments in the middle of 2015. Faiella then received a letter from Ditech informing him that he should contact his "special point of contact," Latosha C., to obtain a correct reinstatement amount. At around the same time, Fannie Mae's counsel sent Faiella a foreclosure notice informing him that a foreclosure sale had been scheduled for October 16, 2015.

Faiella called Latosha C. on September 9, 2015. Latosha C. informed Faiella that he could cure the default by sending Ditech a payment for $6,167. Faiella sent a check for the reinstatement amount that Latosha C. had provided. On September 28, 2015, Faiella received a letter from the bank returning his check and informing him that the payment was for the incorrect amount. The letter also directed Faiella to contact Latosha C. to obtain the correct reinstatement amount on his loan.

As directed, Faiella again contacted Latosha C. Latosha C. informed Faiella that the amount of his payment was correct but that the check was returned because it was a personal check, not a cashier's check. Faiella then obtained a cashier's check for the quoted reinstatement amount of $6,167.21. Faiella sent the cashier's check to Ditech through overnight mail several days before the scheduled foreclosure.

Despite Faiella's attempts to cure his loan, Fannie Mae foreclosed on the property on the scheduled date. Faiella did not learn that the foreclosure had taken place until after it had been completed. Following the foreclosure, Faiella received a letter returning the cashier's check and directing him to obtain a reinstatement amount from Latosha C.

B. Ditech's Servicing Obligations

At the time of the foreclosure, Ditech was required to service Faiella's loan pursuant to Fannie Mae's Single Family Servicing Guide. Doc. no. 64-2, at ¶ 6. That guide contains several relevant requirements concerning Ditech's performance of its servicing duties. Under the guide, Ditech was required to service mortgage loans "in a sound, businesslike manner," and in accordance with applicable laws and good judgment. See Doc. No. 64-7 at 7; see also at 99 (requiring compliance with all "federal, state, and local laws"). Further, Ditech was required to "have effective processes to promptly address borrower inquiries (relating to both current and delinquent mortgage loans)," id. at 74, and to "protect against fraud, misrepresentation, or negligence by any parties involved in the mortgage loan servicing process." Id. at 76. Finally, Ditech was also required to develop a quality control program concerning its delinquency management and default prevention to

guard against misrepresentation and ensure that its representa-
tions to borrowers complied with applicable laws.  Id. at 228-
29.

Procedural Background

In February 2016, Faiella brought a plea of title action in
state court against Fannie Mae and Ditech, asserting a wrongful
foreclosure claim and seeking damages for economic harm and
emotional distress.  The defendants removed the case to this
court.  Faiella amended his complaint on March 30, 2016.  See
doc. no. 9.  The amended complaint, unlike the original
complaint, did not contain any claims for damages against Fannie
Mae and Ditech.  Rather, the amended complaint asserted a sole
claim for wrongful foreclosure against both defendants and
sought a declaration that the foreclosure was void, along with
attorney's fees.  In his amended complaint, Faiella explained
that he intended to file a separate action against Fannie Mae
and Ditech to quiet title and seek damages based on the wrongful
foreclosure.  Id. at 1 n.1.

Ditech moved to dismiss the wrongful foreclosure claim
against it.  Doc. no. 14.  The court granted Ditech's motion to
dismiss, concluding that no wrongful foreclosure claim could lie
against Ditech because it was not the entity that foreclosed on

Faiella's property.  Doc. no. 20.[2]  Because the wrongful foreclosure claim was the only claim alleged against Ditech, Ditech was dismissed from the case.

In July 2016, Fannie Mae filed a motion to rescind its foreclosure deed and to restore Faiella's original mortgage. Doc. no. 25.  Fannie Mae argued that if its requested relief were granted, Faiella would still be in default but could remedy that default under the terms of the mortgage.  Faiella objected, asserting that Fannie Mae's requested relief would cause him to waive his unasserted claims for damages[3] and would leave Faiella with a defaulted mortgage that he could not afford to pay.  Doc. no. 29.

The court denied Fannie Mae's motion to rescind the foreclosure deed because Fannie Mae had not brought a claim for affirmative equitable relief and had failed to demonstrate that such relief was warranted.  Doc. no. 32.  In addition, the court observed that during the hearing on Fannie Mae's motion to rescind its foreclosure deed, Faiella had requested leave to amend his complaint to assert damages claims against Fannie Mae. The court granted Faiella's oral motion, concluding that

---

[2] In this order, the court also denied Faiella's motion to remand the action back to state court.

[3] Faiella apparently did not assert his claims for damages in state court as he had represented in his amended complaint.

"[g]iven the early posture of this case, the court grants Faiella leave to file an amended complaint asserting his damages claims against Fannie Mae."  Id. at 4-5.

The second amended complaint was docketed on October, 12, 2016.  Doc. no. 40.  That complaint asserted claims against Fannie Mae and Ditech for violation of 12 C.F.R. § 1026.41, deceit, negligent misrepresentation, violation of the Fair Debt Collection Practices Act, violation of the New Hampshire Unfair, Deceptive, or Unreasonable Collection Practices Act, and violation of the New Hampshire Consumer Protection Act.  Fannie Mae moved to dismiss the statutory claims against it, arguing that each of them failed as a matter of law.  Ditech moved to strike all claims against it, arguing that the court had only granted Faiella leave to amend his complaint to assert claims against Fannie Mae.

The court granted Fannie Mae's motion to dismiss.  Doc. no. 50.  In addition, the court granted Ditech's motion to strike, concluding that it had "granted Faiella a limited opportunity to amend his complaint to assert damages claims against Fannie Mae," and "that Faiella did not seek leave to add claims against Ditech, and no such opportunity was granted."  Id. at 6.  Accordingly, the court struck Faiella's claims against Ditech from the second amended complaint.

Following the court's order on Faiella's motion to strike, Faiella did not seek leave to amend his complaint to assert damages claims against Ditech. Accordingly, the remaining claims in this case are Faiella's claims against Fannie Mae for negligent misrepresentation and deceit.

## Discussion

Faiella's claims against Fannie Mae for deceit and negligent misrepresentation are based on Ditech's representation that he should contact his account representative, Latosha C., who could provide him with the correct reinstatement amount. Faiella alleges that this was a misrepresentation because Latosha C., in fact, did not have access to the correct reinstatement amount. Faiella further alleges that Latosha C. provided him the incorrect reinstatement amount. Faiella alleges no misconduct or wrongdoing by Fannie Mae in support of his deceit and negligent misrepresentation claims. Therefore, Faiella seeks to hold Fannie Mae indirectly liable for the conduct of Ditech, its servicer.

Fannie Mae moves for summary judgment on Faiella's claims based on the economic loss doctrine and the Merrill doctrine. In addition, Fannie Mae moves to strike Faiella's requests for emotional distress damages, punitive damages, loss of consortium

damages, and attorney's fees, arguing that those damages and fees are not available under Faiella's claims.

Faiella objects, contending that neither the economic loss doctrine nor the Merrill doctrine are applicable to his claims. Faiella also contends that he is entitled to emotional distress damages because Ditech's conduct shocks the conscience.

## I. Merrill Doctrine

Fannie Mae contends that Faiella's claims against it should be dismissed under the Merrill doctrine because, even if Ditech provided Faiella false information or improperly serviced his loan, Fannie Mae did not authorize Ditech to do so. In response, Faiella contends that the Merrill doctrine is inapplicable to his claims.

### A. Legal Framework

The Merrill doctrine derives its name from Federal Crop. Ins. Corp. v. Merrill, 332 U.S. 380 (1947). In Merrill, an agent for the Federal Crop Insurance Company ("FCIC"), a government-owned corporation, erroneously informed the plaintiffs that their crops were insurable under the Federal Crop Insurance Act and its accompanying regulations. Id. at 382-83. When the plaintiffs sought recovery under their insurance contract, the FCIC refused to pay based on the operative regulations. Id. at 383. The plaintiffs brought

suit, and the state court found the FCIC liable based on the theory that a private insurance company, under similar circumstances, would be bound by its agent's actions.  Id.

On appeal, the Supreme Court concluded that the FCIC could not be bound by its agent's representations or estopped from enforcing its regulations.  Id. at 384-85.  The Court assumed that the plaintiffs could recover against a private insurance company but emphasized that the FCIC was not an ordinary private entity.  Id. at 383-84.  The Court reasoned that the "Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends."  Id. at 384.  In support of its conclusion that the FCIC, as a federal instrumentality, could not be held liable for its agents' representations, the Court stated that "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority."  Id.

Based on Merrill, "most courts  . . . have held that a federal government entity cannot be held responsible for the unauthorized acts of an agent."  Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2013).  For example, the First Circuit has stated that "doctrines such as estoppel and apparent authority are not available to bind the

13

federal sovereign." United States v. Ellis, 527 F.3d 203, 208 (1st Cir. 2008) (assessing whether government could be bound by promise) (quoting United States v. Flemmi, 225 F.3d 78, 85 (1st Cir. 2000)).  The rationale for the Merrill rule against estoppel rests on separation of powers and public policy principles.  Mendrala, 955 F.2d at 1140.  As the District Court of Maine has observed, the primary policy underlying the Merrill doctrine is that Congress has the power "to impose limits on what its creations may do."  Dupuis v. Fed. Home Loan Mortg. Corp., 879 F.Supp. 139, 145 (D. Me. 1995).

B. Application

Here, Fannie Mae argues that it is protected under the Merrill doctrine because it is a federal instrumentality and because Ditech lacked authority from Fannie Mae to provide Faiella incorrect information or otherwise improperly service his loan.  In support, Fannie Mae points to the provisions in its Family Servicing Guide that required Ditech to service its loans in a reasonable and legal manner and to protect against misrepresentation.  Fannie Mae also argues that there is no allegation in the operative complaint that it expressly authorized Ditech to provide Faiella with false information.

Faiella does not dispute that Ditech lacked actual authority to provide him false information or commit the

servicing errors at issue in this case.[4]  Rather, Faiella asserts
that the Merrill doctrine is inapplicable here for three
principal reasons.  First, Faiella argues that the principle of
estoppel does allow for federal instrumentalities to be held
responsible for the unauthorized acts of their agents in certain
circumstances.  Second, Faiella contends that Fannie Mae has not
demonstrated that it is a federal instrumentality under the
Merrill doctrine.  Third, Faiella argues that the Merrill
doctrine does not apply to tort claims.

### 1.    Federal Instrumentality

Faiella contends that Fannie Mae has not presented evidence
demonstrating that it should be considered a federal
instrumentality for the purposes of the Merrill doctrine.  In
response, Fannie Mae argues that it is a federal instrumentality
under the Merrill doctrine because of its governmental purpose.

"Classification as a government entity in [the Merrill]
context turns on whether estoppel would thwart congressional
intent."  Paslowski, 129 F.Supp.2d at 800 (quoting Mendrala, 955
F.2d at 1140).  Accordingly, courts have concluded that an
entity is a federal instrumentality under the Merrill doctrine
where Congress created the entity to serve an important

---

[4] Faiella argues that Ditech possessed apparent authority to
commit the alleged servicing errors at issue.  Doc. no. 87-1 at
12-14.

15

governmental objective or purpose.  *Paslowski*, 129 F.Supp.2d at 800-01 (citing cases).

Fannie Mae was created by federal statute in 1938 for the purpose of providing stability in the secondary market for residential mortgages, increasing liquidity in mortgage investments, and promoting access to mortgage credit for consumers.  *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 599 (D.C. Cir. 2017) (citing 12 U.S.C. § 1716); *see also* 12 U.S.C. §§ 1716b & 19 (describing Fannie Mae's secondary market operations).  Although Fannie Mae was initially government-owned, Congress converted Fannie Mae into a "Government-sponsored private corporation" in 1968.  *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 557 (2017) (describing history of Fannie Mae).  Despite this conversion, Fannie Mae's "charter, and therefore its function ..., were unchanged."  *Herron*, 861 F.3d at 168 (quoting *DeKalb County v. Federal Housing Finance Agency*, 741 F.3d 795, 797 (7th Cir. 2013)).

Based on its government-sponsored status, numerous courts have concluded that Fannie Mae is a federal instrumentality under the *Merrill* doctrine and, for that reason, cannot be liable for the unauthorized acts of its servicers.  *Gray v. Seterus, Inc.*, 233 F. Supp. 3d 865, 870 (D. Or. 2017); *Toler v. PHH Mortg. Corp.*, No. 6:12-6032, 2014 WL 1266838, at *3 (W.D. Ark. Mar. 26, 2014) (dismissing claims against Fannie Mae);

Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1035 (N.D. Cal. 2013) (dismissing claims against Fannie Mae); Hinton v. Fed. Nat. Mortg. Ass'n, 945 F. Supp. 1052, 1060 (S.D. Tex. 1996), aff'd, 137 F.3d 1350 (5th Cir. 1998). Moreover, several other courts have concluded that the Federal Home Loan Mortgage Corporation ("Freddie Mac"), another government-sponsored entity with similar governmental objectives, is a federal instrumentality under the Merrill doctrine.[5]

Nevertheless, Faiella contends that Fannie Mae has not demonstrated that it is a federal instrumentality for the purposes of the Merrill doctrine. In support, Faiella cites U.S. ex rel. Adams v. Aurora Loan Servs., Inc., 813 F.3d 1259, 1261–62 (9th Cir. 2016), and Herron v. Fannie Mae, 861 F.3d 160, 167 (D.C. Cir. 2017). Those cases, however, do not address whether Fannie Mae is a federal instrumentality under the Merrill doctrine but instead assess whether Fannie Mae qualifies as a federal entity for different purposes. See Aurora 813 F.3d at 1261–62 (9th Cir. 2016) (Fannie Mae not a federal entity for

---

[5] See, e.g., Mendrala v. Crown Mortg. Co., 955 F.2d 1132, 1141 (7th Cir. 1992)(concluding that the Merrill doctrine barred claims against the Freddie Mac based on the actions of its servicer); McCauley v. Thygerson, 732 F.2d 978, 982 (D.C. Cir. 1984); Johnson v. Federal Home Loan Mortg. Corp., 2013 WL 2445367, at *4 (W.D. Wash. June 5, 2013); Paslowski v. Standard Mortg. Corp. of Georgia, 129 F. Supp. 2d 793, 804–05 (W.D. Pa. 2000).

purposes of False Claims Act); Herron, 861 F.3d at 167 (Fannie Mae not a government actor for constitutional purposes).  As Faiella concedes, however, the tests for determining whether an entity is a federal instrumentality differ depending on the context in which the issue is addressed.  Doc. no. 87-1 at 10 n.8;  see also Mendrala, 955 F.2d at 1139-40 (concluding that Freddie Mac is a federal entity under Merrill but not under the Federal Tort Claims Act).  Accordingly, Faiella has presented no authority supporting his assertion that Fannie Mae is not a federal instrumentality under the Merrill doctrine.

Because Fannie Mae was designed for an important governmental objective and because it is still pursuing that objective, it is a federal instrumentality for the purpose of the Merrill doctrine.

### 2. Estoppel Against the Government

Faiella argues that even if Fannie Mae is a federal instrumentality, it can still be estoped under certain circumstances.  In support, Faiella cites several cases supporting the proposition that estoppel and apparent authority are valid bases to bind a federal entity.  Recent case law from the Supreme Court and the First Circuit, however, has emphasized that estoppel against the government is exceedingly rare.  See Office of Personnel Management v. Richmond, 496 U.S. 414, 421-23

(1990); Nagle v. Acton-Boxborough Reg'l Sch. Dist., 576 F.3d 1, 4-6 (1st Cir. 2009).  The First Circuit has held that if estoppel against the government is to occur, the party seeking to assert estoppel "must show that the government engaged in affirmative misconduct."  Shafmaster v. United States, 707 F.3d 130, 136 (1st Cir. 2013).

Although "affirmative misconduct" has not been defined, it is generally understood to require more than "careless statements."  Nagle, 576 F.3d at 5-6.  In other words, "affirmative misconduct requires something more than simple negligence."  Dantran, Inc. v. U.S. Dept. of Labor, 171 F.3d 58, 67 (1st Cir. 1999).

Here, there is no evidence in the record that Fannie Mae authorized or affirmatively encouraged Ditech to improperly service Faiella's loan.  Although Faiella argues that Fannie Mae failed to prevent Ditech's alleged servicing violations, that conduct, even if true, fails to demonstrate that Fannie Mae engaged in any affirmative misconduct.  See Mendrala, 955 F.2d at 1141 (Freddie Mac's failure to prevent misrepresentations from servicer was not affirmative misconduct); see also Paslowski, 129 F. Supp. 2d 793, 800 n. 11 (W.D. Pa. 2000) (no affirmative misconduct to estop Freddie Mac where servicer acted

outside its authority).[6]  Finally, there is no evidence in the
record that would support an inference that Ditech's alleged
misrepresentations were the result of affirmative misconduct as
opposed to carelessness.  Accordingly, the court concludes that
this is not a case where estoppel is applicable to bind a
federal instrumentality.

### 3. Application to Tort Claims

Faiella argues that the Merrill doctrine applies only to
contract claims, not tort claims.  In response, Fannie Mae
argues that the Merrill doctrine does apply to tort claims.

---

[6] The only evidence that Faiella submitted in support of his
argument that Fannie Mae should be estopped is a consent decree
from April 2015 arising out of a litigation between Ditech and
the Consumer Financial Protection Bureau.  Doc. no. 89.  Faiella
briefly argues that the consent decree provided Fannie Mae
"notice that Green Tree had a pattern of making false statements
to borrowers similar to above."  Doc. no. 87-1 at 13.  As
discussed above, the failure to prevent an agent's
misrepresentation does not, generally, constitute affirmative
misconduct.  In any case, Faiella, does not explain how any
portion of the consent decree, a sixty-five page document,
provides notice of the alleged misrepresentations in this case.
This is especially problematic because the consent decree states
that Ditech "neither admits nor denies any of the allegations in
the Complaint, except as specifically stated in this order."
Doc. no. 89 at ¶ 3.  Therefore, the court does not credit the
consent decree as evidence of any wrongdoing on the part of
Ditech or Fannie Mae.  See Quasebarth Quasebarth v. Green Tree
Servicing, LLC, No. 4:14-CV-223 (CDL), 2016 WL 427087, at *3
(M.D. Ga. Feb. 3, 2016) (declining to credit consent decree
between the CFPB and Ditech because the order contained no
admissions of guilt and was inadmissible under the Federal Rules
of Evidence).

Although the Merrill case involved a defense to a contract claim, courts have applied the Merrill doctrine to bar both contract and tort claims.  See Restatement (Third) Of Agency § 2.03 (2006)("The Merrill doctrine has been extended beyond contract claims . . . ."); Seterus, 233 F. Supp. 3d at 870 (dismissing statutory tort claims against Fannie Mae based on Merrill doctrine); Toler, 2014 WL 1266838, at *3 (dismissing tortious interference with contractual relations claims based on Merrill doctrine); Cannon, 917 F. Supp. 2d at 1035 (dismissing statutory tort claim and breach of fiduciary duty claim against Fannie Mae and observing that "the Merrill doctrine has been applied to both contract and tort-based claims"); Deerman v. Fed. Home Loan Mortg. Corp., 955 F. Supp. 1393, 1400-01 (N.D. Ala. 1997) (dismissing statutory tort claim under the Merrill doctrine), aff'd sub nom. Deerman v. Fed. Home Loan Mortg., 140 F.3d 1043 (11th Cir. 1998); Paslowski, 129 F. Supp. 2d at 804 (dismissing statutory tort claim against Freddie Mac based on Merrill doctrine).

In support of his argument that the Merrill doctrine does not apply to tort claims, Faiella cites Bowen v. Ditech, 2:16-cv-00195-JAW, 2017 WL 4158601 (D. Me. 2017).  Faiella argues that Bowen is "a good example of the cases that have held that the Merrill Doctrine applies to contract claims; not to torts."  In Bowen, the court concluded that Fannie Mae could be vicariously

liable based on its servicer's conduct.  Id. at 16.  The
defendants in Bowen, however, never raised the Merrill doctrine
as a defense, and, as a result, the court in Bowen did not
consider whether the doctrine applied to the tort claims alleged
there.  Id.  Therefore, Bowen does not support Faiella's
assertion that the Merrill doctrine is inapplicable to tort
claims.[7]

Accordingly, the court concludes that the Merrill doctrine
applies to Faiella's tort claims.  Because Fannie Mae is a
federal instrumentality and because it is undisputed that Fannie
Mae did not authorize Ditech to commit the servicing errors at
issue, Fannie Mae is protected under the Merrill doctrine.
Therefore, Fannie Mae is entitled to summary judgment on
Faiella's claims for negligent misrepresentation and deceit.

## II. Economic Loss Doctrine and Motion to Strike

Because Fannie Mae is entitled to summary judgment under
Merrill doctrine on Faiella's remaining claims, the court need

---

[7] Faiella also cites Charest v. FNMA, 9 F.Supp.3d 114, 127-
28 (D. Mass. 2014) and Cremaldi v. Wells Fargo Bank, N.A., 2017
WL 1190377, at *17 (D. Mass. Mar. 30, 2017) in support of his
argument that the Merrill doctrine cannot be applied to tort
claims.  In both of those cases, however, the defendant did not
raise, and the court did not consider, whether the Merrill
doctrine applied.

not address Fannie Mae's remaining arguments concerning the economic loss doctrine and the availability of certain damages.

## Conclusion

For the foregoing reasons, Fannie Mae's motion for summary judgment (doc. no. 64) is granted and Fannie Mae's motion to strike portions of Ralph Faiella's affidavit (doc. no. 93) is denied as moot.

The clerk shall close the case and enter judgment in accordance with this order.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge


December 13, 2017

cc:   Benjamin M. Greene, Esq.
      Amy B. Hackett, Esq.
      David Himelfarb, Esq.
      William C. Sheridan, Esq.